**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | |
|---|---|
| MICHELLE ANGELINA FAULK, <br><br> Plaintiff, <br><br> v. <br><br> TRANS UNION LLC, KINGSTON DATA & CREDIT INTERNATIONAL INC., and ALDOUS AND ASSOCIATES PLLC, <br><br> Defendants. | **Case No.: 2:26-cv-04765** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Michelle Angelina Faulk ("Plaintiff") brings this action on an individual basis, against Trans Union LLC ("Trans Union"), Kingston Data & Credit International Inc., ("KDC"), and Aldous and Associates PLLC ("Aldous") (KDC and Aldous collectively the "Debt Collector Defendants") (Trans Union, KDC, and Aldous collectively, "Defendants") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et. seq.*, arising out of Defendants' mixing Plaintiff's credit file with another consumer.

**PARTIES**

1.      Plaintiff is a natural person residing in Philadelphia, Pennsylvania, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2.      Defendant Trans Union is a corporation with a principal place of business located at 555 West Adams Street, Chicago, IL 60661, and is authorized to do business in the State of Pennsylvania, including within this District.

1

3. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

4. The information Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Trans Union also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

5. Trans Union collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Trans Union collects and maintains information about them. Not only that, but consumers cannot remove information that Trans Union collects and maintains about them from the Trans Union database. Further, Trans Union sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Trans Union sold.

6. Defendant KDC is a collection agency with a principal place of business located at 1575 Bishop St N #100, Cambridge, ON N1R 7J4, CA, and is authorized to do business in the State of Pennsylvania, including within this District.

7. KDC is a "Furnisher" as defined in 12 CFR 1022.41. KDC regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as KDC, is an entity that reports information about consumers to consumer reporting agencies ("CRAs"), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like

2

CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

8.    KDC regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning of the FDCPA, as defined in 15 U.S.C. § 1692a(6). KDC regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including this district.

9.    Defendant Aldous is a law firm and collection agency with a principal place of business located at 4625 S 2300 E, Suite 207, Holladay, UT 84117, and is authorized to do business in the State of Pennsylvania, including within this District.

10.    Aldous is a "Furnisher" as defined in 12 CFR 1022.41.  Aldous regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.  A data furnisher, such as Aldous, is an entity that reports information about consumers to consumer reporting agencies ("CRAs"), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

11.    Aldous regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning of the FDCPA, as defined in 15 U.S.C. § 1692a(6). Aldous regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including this district.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiff's Mixed Credit File as of March 2026

14.     Beginning in or around late February 2026 and early March 2026, Plaintiff noticed that the credit limits on her credit accounts had been reduced.

15.     On or about February 20, 2026, Plaintiff noticed that the credit limit on her CareCredit Synchrony ("Synchrony") credit line had been reduced from $4,000.00 to $1,650.00.

16.     On or about March 3, 2026, Plaintiff noticed that the credit limit on her PayPal credit line had been reduced from $6,250.00 to $5,850.00.

17.     Finally, on or about March 11, 2026, Plaintiff received a notice from non-party Cross River Bank through non-party Upgrade, Inc. ("Upgrade") concerning her Upgrade credit line.

18.     The notice advised Plaintiff that her Upgrade credit line had been reduced from $2,100.00 to $500.00 and that she was no longer allowed to make new ACH transfers on her Upgrade card.

19.     The notice stated that information obtained from Defendant Trans Union influenced Upgrade's decision, in whole or in part.

20. Upon information and belief, non-parties Synchrony and PayPal also obtained information from Defendant Trans Union which influenced their decisions, in whole or in part.

21. The notice also identified, among other things, that the "amount recently in collections is too high" and that a "derogatory public record or collection" adversely affected Plaintiff's credit score.

22. Plaintiff was shocked, confused, and worried by Upgrade's notice because she did not recognize any collection account that could have affected her credit standing or caused her credit line to be reduced.

23. On or about March 30, 2026, Plaintiff had no choice but to take out a hardship loan from her retirement savings in order to pay off part of her Upgrade credit line due to the severely reduced credit limit, which significantly hurt her finances.

24. After receiving Upgrade's notice reducing her credit line, Plaintiff reviewed her Trans Union credit information through non-party Credit Karma.

25. On or about April 4, 2026, Plaintiff obtained and reviewed a copy of her Trans Union credit report dated March 4, 2026, through Credit Karma.

26. Upon reviewing the contents of her Trans Union credit report, Plaintiff was confused by the appearance of several pieces of information that did not belong to Plaintiff at all.

27. Specifically, Defendant was reporting the following accounts which did not belong to Plaintiff (the "Mixed Accounts"):

      (a)     ALDOUS AND ASSOCIATES
                Date Opened: September 28, 2025
                Balance: $185.00
                Status: Open
                Type: Derogatory
                Remarks: Placed for collection
                Original creditor: Club4Fitness

(b)    KINGSTON DATA & CREDIT INTERNATIONAL
Date Opened: December 27, 2025
Balance: $1,562.00
Status: Open
Type: Derogatory
Remarks: Placed for collection
Original creditor: Anytime Fitness Lafayette, LA

28.    Plaintiff did not recognize the Mixed Accounts and had not opened them, authorize anyone to open them in her name, agree to be responsible for them, or owe the balances reported in connection with them.

29.    Upon information and belief, the Mixed Accounts belong to an entirely different consumer with a different middle name, date of birth, Social Security number, and address history from Plaintiff (the "Non-Consumer").

30.    Plaintiff was confused and concerned because the Mixed Accounts were being displayed as open derogatory collection accounts despite the fact that she did not recognize them as hers.

31.    Plaintiff reasonably believed that the appearance of open collection accounts could affect how creditors viewed her creditworthiness.

32.    By reporting the Mixed Accounts in a credit file presumably about Plaintiff, despite the fact that the collection accounts do not belong to Plaintiff, Defendant Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's First April 2026 Dispute to Defendant Trans Union**

33.    On or about April 4, 2026, concerned that something was wrong with her credit file, Plaintiff disputed the inaccurate collection accounts with Trans Union through Credit Karma.

34.     Plaintiff specifically identified the Mixed Accounts and their original creditors and explained that she did not recognize either account, had no knowledge of either collection account, had no relationship with either original creditor, and that neither account belonged to her.

35.     The mixed account associated with Defendant KDC was especially alarming because it belonged to an original creditor from Louisiana, a state where Plaintiff had never lived and with which she had no connection.

36.     In connection with the Mixed Accounts, Plaintiff selected the dispute reason "Ownership" and stated that she had no knowledge of the collection account.

37.     Plaintiff requested that Trans Union reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

**Trans Union's Unreasonable Dispute Reinvestigation in Early April 2026**

38.     Defendant Trans Union received Plaintiff's first April 2026 dispute and request that the Mixed Accounts be removed from her credit file.

39.     Upon information and belief, Defendant Trans Union sent Defendant KDC an Automated Credit Dispute Verification ("ACDV") pursuant to Plaintiff's first April 2026 dispute.

35.     On or about April 17, 2026, Defendant Trans Union responded to Plaintiff's first April 2026 dispute and deleted the mixed Aldous & Associates account ("Mixed Aldous Account") from Plaintiff's credit report.

36.     However, in their dispute response to Plaintiff's first April 2026 dispute Defendant Trans Union advised that the mixed Kingston Data & Credit Internation account ("Mixed KDC Account") had been verified as accurate and would remain on Plaintiff's credit report.

37.     Plaintiff was confused and frustrated as she had explained that neither of the Mixed Accounts, including the Mixed KDC Account, belonged to her.

7

38.     By continuing to report the Mixed KDC Account after Plaintiff disputed that the account did not belong to her, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

39.     Defendant Trans Union failed to reinvestigate Plaintiff's first April 2026 dispute and failed to remove all the disputed information.

40.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation of Plaintiff's first April 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**KDC's Unreasonable Dispute Investigation in Early April 2026**

41.     Upon information and belief, Defendant KDC received Defendant Trans Union's ACDV in relation to Plaintiff's first April 2026 dispute and failed to conduct a reasonable reinvestigation with respect to the Mixed KDC Account disputed by Plaintiff.

42.     Upon information and belief, Defendant KDC failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute in or about April 2026.

43.     Upon information and belief, despite receiving Plaintiff's dispute, Defendant KDC "verified" the disputed Mixed KDC Account as accurate to Defendant Trans Union in or about April 2026.

44.     Defendant KDC violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information did not belong to Plaintiff.

8

**Defendants' Method of Considering Consumer Credit Report Disputes**

45.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

46.     The credit bureaus, Equifax, Experian, Defendant Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

47.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

48.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

49.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

50.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification, or ACDV, electronic form.

51.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

52.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

53.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

54.    The data furnishers, like Defendant KDC, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

55.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Plaintiff Applies for Credit in April 2026**

56.    Needing to obtain credit after the limitations placed on her Upgrade account as a result of Defendant Trans Union's inaccurate reporting, Plaintiff began searching for credit opportunities.

57.    On or about April 23, 2026, Plaintiff applied for credit with non-party Forge Credit Union ("FCU").

58.    In order to make a determination on Plaintiff's credit application, FCU needed to obtain copies of Plaintiff's credit file. Plaintiff provided them with his personal identification information, including her Social Security number, and authorized them to obtain her credit file.

59.    On or about April 23, 2026, Defendant Trans Union sold Plaintiff's credit report, which included the Mixed KDC Account, to FCU.

60.    On or about the same date, FCU sent Plaintiff an adverse action notice regarding her credit application.

61.    Among the reasons for the credit denial, FCU listed "Derogatory Public Record or Collection Filed."

62.    Plaintiff was denied credit with FCU as a result of Defendant Trans Union's continued reporting of the Mixed KDC Account.

63.    By reporting the Mixed KDC Account in a credit file presumably about Plaintiff, despite the fact that the collection accounts do not belong to Plaintiff, Defendant Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

### Plaintiff's Second April 2026 Dispute to Defendant Trans Union

64.    Frustrated by the continued reporting of the Mixed KDC Account and the damage it had caused to her credit, Plaintiff submitted a second dispute.

65.    In or around late April 2026, Plaintiff submitted a second dispute with Defendant Trans Union.

66.    In her dispute, Plaintiff identified the Mixed KDC Account, explained that it did not belong to her, and asked Defendant Trans Union to remove it from her credit report.

### Trans Union's Unreasonable Dispute Reinvestigation in Late April 2026

67.    Defendant Trans Union received Plaintiff's second April 2026 dispute and request that the Mixed KDC Account be removed from her credit file.

68.    Upon information and belief, Defendant Trans Union sent Defendant KDC an ACDV pursuant to Plaintiff's second April 2026 dispute.

69.    On or about May 5, 2026, Defendant Trans Union responded to Plaintiff's second

April 2026 dispute.

70.    In their dispute response to Plaintiff's second April 2026 dispute Defendant Trans Union explained that the Mixed KDC Account had been verified as accurate and would remain on Plaintiff's credit report.

71.    Plaintiff was frustrated by Defendant Trans Union's continued refusal to correct their reporting and remove the Mixed KDC Account from her credit report.

72.    By continuing to report the Mixed KDC Account after Plaintiff disputed that the account did not belong to her, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

73.    Defendant Trans Union failed to reinvestigate Plaintiff's second April 2026 dispute and failed to remove all the disputed information.

74.    Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation of Plaintiff's second April 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### KDC's Unreasonable Dispute Investigation in Late April 2026

75.    Upon information and belief, Defendant KDC received Defendant Trans Union's ACDV in relation to Plaintiff's second April 2026 dispute and failed to conduct a reasonable reinvestigation with respect to the Mixed KDC Account disputed by Plaintiff.

76.    Upon information and belief, Defendant KDC failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute in or about late April 2026 or early May 2026.

77.    Upon information and belief, despite receiving Plaintiff's dispute, Defendant KDC

"verified" the disputed Mixed KDC Account as accurate to Defendant Trans Union in or about late April 2026 or early May 2026.

78.    Defendant KDC violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information did not belong to Plaintiff.

**Plaintiff's May 2026 Dispute to Defendant Trans Union**

79.    After Defendant Trans Union continued reporting the Disputed KDC Collection Account, and after Plaintiff had already seen that collection reporting negatively affect her credit standing, Plaintiff knew she needed to continue pursuing correction of the account.

80.    In or around May 2026, Plaintiff again disputed the account directly with Defendant Trans Union.

81.    Plaintiff requested that Defendant Trans Union reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

**Trans Union's Unreasonable Dispute Reinvestigation in May 2026**

82.    Defendant Trans Union received Plaintiff's May 2026 dispute and request that the Mixed KDC Account be removed from her credit file.

83.    Upon information and belief, Defendant Trans Union sent Defendant KDC an ACDV pursuant to Plaintiff's May 2026 dispute.

84.    On or about May 22, 2026, Defendant Trans Union responded to Plaintiff's May 2026 dispute.

85.    In their dispute response to Plaintiff's May 2026 dispute Defendant Trans Union explained that the Mixed KDC Account had been verified as accurate and would remain on Plaintiff's credit report.

13

86.    Plaintiff was frustrated by Defendant Trans Union's continued refusal to correct their reporting and remove the Mixed KDC Account from her credit report.

87.    By continuing to report the Mixed KDC Account after Plaintiff disputed that the account did not belong to her, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

88.    Defendant Trans Union failed to reinvestigate Plaintiff's May 2026 dispute and failed to remove all the disputed information.

89.    Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation of Plaintiff's second April 2026 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**KDC's Unreasonable Dispute Investigation May 2026**

90.    Upon information and belief, Defendant KDC received Defendant Trans Union's ACDV in relation to Plaintiff's May 2026 dispute and failed to conduct a reasonable reinvestigation with respect to the Mixed KDC Account disputed by Plaintiff.

91.    Upon information and belief, Defendant KDC failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute in or about May 2026.

92.    Upon information and belief, despite receiving Plaintiff's dispute, Defendant KDC "verified" the disputed Mixed KDC Account as accurate to Defendant Trans Union in or about May 2026.

93.    Defendant KDC violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information

14

available to it, and failing to recognize that the disputed information did not belong to Plaintiff.

**The Debt Collector Defendants Collection Practices Act Violations**

94.    At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), in that she is a natural person allegedly obligated to pay a debt arising from personal, family, or household purposes.

95.    The alleged obligations $185 obligation to Defendant Aldous and $1,562 obligation to Defendant KDC arose from debts entered into for personal purposes and therefore constitutes a "debt" within the meaning of 15 U.S.C. § 1692a(5).

96.    Upon information and belief, the Debt Collector Defendants are each a "debt collector" as defined by 15 U.S.C. § 1692a(6), in that it regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed to another, and regularly uses the mails and instrumentalities of interstate commerce in doing so. The Debt Collector Defendants identify themselves as collection agencies and engaged in collection activities with respect to the Mixed Accounts and their respective obligations.

97.    In connection with its collection activities, Defendant KDC represented that Plaintiff was legally obligated to pay $1,562 to Anytime Fitness Lafayette, LA

98.    In connection with its collection activities, Defendant Aldous represented that Plaintiff was legally obligated to pay $185 to Club4Fitness.

99.    These representations were false. As alleged above, the Mixed Accounts did not represent money owed by Plaintiff; they represented money owed by the Non-Consumer.

100.    The Debt Collector Defendants false representation that Plaintiff owed any balance on the Mixed Tradelines misrepresented the character, amount, and legal status of the alleged obligation. By characterizing the delinquent debt of the Non-Consumer as belonging to Plaintiff,

15

the Debt Collector Defendants violated 15 U.S.C. § 1692e(2)(A).

101.    The Debt Collector Defendants further violated 15 U.S.C. § 1692e(8) by communicating credit information that it knew or should have known was false. The Debt Collector Defendants caused and/or maintained derogatory credit reporting reflecting that Plaintiff owed a collection debt, and then continued to certify or verify that reporting after receiving notice of Plaintiff's disputes and documentation demonstration that the Mixed Accounts were not valid debts owed by Plaintiff.

102.    The Debt Collector Defendants also violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means in connection with debt collection. Specifically, the Debt Collector Defendants initial reporting of the Mixed Accounts on Plaintiff's credit reports and Defendant KDC's continued verification and certification of the alleged obligation—despite the underlying account statement establishing that Plaintiff was not a debtor—functioned to pressure payment and induce compliance by portraying Plaintiff as delinquent on a legitimate collection account, when the Debt Collector Defendants lacked a truthful basis to do so.

103.    Finally, the Debt Collector Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law. The Debt Collector Defendants treated the Mixed Accounts as collectible from Plaintiff despite the fact the Mixed Accounts were owed by the Non-Consumer; therefore, any attempt to collect, demand, or maintain a collection balance in that amount constituted an unlawful effort to collect an amount not owed.

104.    The Debt Collector Defendants' conduct, including its continued derogatory furnishing and verification of the alleged debt after notice of dispute, was undertaken in connection with the collection of a consumer debt and caused Plaintiff harm as described herein.

105.    Defendant KDC's continued certification of the Mixed KDC Account, despite notice that Plaintiff disputed the debt and provided information establishing that no such debt existed, resulted in the continued erroneous and derogatory reporting of the account in Plaintiff's consumer files and reports.

106.    Through these actions, the Debt Collector Defendants made false representations concerning the character, amount, and legal status of the alleged debt, communicated credit information which it knew or should have known was false, employed deceptive means in connection with the collection of a debt, and attempted to collect an amount not authorized by agreement or permitted by law.

107.    The Debt Collector Defendants' conduct was undertaken in connection with the collection of a consumer debt and caused harm to Plaintiff as described herein.

108.    In addition to the foregoing, Defendant KDC further violated the above-referenced provisions of the FDCPA by failing to reasonably investigate Plaintiff's disputes after receiving notice from the Defendant Trans Union, failing to review all dispute materials and supporting documentation provided in connection with those disputes, failing to cease furnishing the inaccurate collection account, and failing to correct the false reporting, all in violation of 15 U.S.C 1681s-2(b)(1)(A)-(E). In each instance in which Defendant KDC received notice of Plaintiff's disputes and nevertheless verified, certified, or continued reporting the Mixed KDC Account as owed by Plaintiff, Defendant KDC perpetuated a material inaccuracy and disseminated a false communication concerning the character, amount, and legal status of the alleged debt. Each such unreasonable investigation and continued false certification—despite the true state of affairs that the Mixed KDC Account belongs to the Non-Consumer and not to Plaintiff—constitutes a false representation and deceptive communication within the meaning of 15 U.S.C. §§

17

1692e(2)(A), 1692e(8), 1692e(10), and an attempt to collect an amount not authorized by agreement or permitted by law under § 1692f(1).

**Plaintiff's Damages**

109. Upon information and belief, because Defendant Trans Union continues to mix Plaintiff's credit file with that of the Non-Consumer.

110. As a result of the "mixed file," Defendant Trans Union made it practically impossible for Plaintiff to obtain credit.

111. Upon information and belief, on at least one occasion, Plaintiff received a phone call from Defendant Aldous attempting to collect a debt regarding the Mixed Aldous Account.

112. Upon information and belief, on at least one occasion, Plaintiff called Defendant KDC to dispute the Mixed KDC Account directly, and was told that there was no account associated with Plaintiff's personal identifying information, including her full name, date of birth, and Social Security number. Nonetheless, Defendant KDC continued to verify the Mixed KDC Account as accurate.

113. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

114. At all times pertinent hereto, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

115. Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

116.    Defendant Trans Union is aware that its credit reporting system can and does result in the mixing of consumer credit files, commonly known as the "mixed file" problem. Defendant Trans Union's matching algorithms and database rules improperly associate and merge credit information from different individuals, leading to inaccurate credit reports, many times each year. These errors not only misrepresent consumers' financial histories but also expose personal and financial information to unauthorized third parties, creating risks of identity theft, privacy violations, and unjust credit denials. Despite knowledge of these effects, Defendant Trans Union's algorithms and procedures continue to allow and cause consumers' files to be inappropriately merged, interfering with their ability to access credit, employment, housing, and insurance.

117.    Defendant Trans Union has long been aware of the mixed file issue, as evidenced by federal enforcement actions and litigation spanning decades, including lawsuits brought by the Federal Trade Commission, state Attorneys General, and many private consumers. Defendant Trans Union has previously entered into agreements and consent decrees mandating corrective action, and Defendant Trans Union has been penalized with punitive damages awards in private actions. Yet, mixed files persist.

118.    Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of credit denials and having another consumer's credit information mixed into Plaintiff's credit file.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Defendant Trans Union)

119. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

120. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 .S.C. §1681e(b) (emphasis added).

121. On at least one occasion, Defendant Trans Union prepared patently false consumer reports concerning Plaintiff.

122. Defendant Trans Union mixed another consumer's credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

123. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

124. As a result of Defendant Trans Union's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress

20

including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of credit denials and having another consumer's credit information mixed into Plaintiff's credit file.

125.    Defendant Trans Union's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant Trans Union was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

126.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendant Trans Union)**

127.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

128.    The FCRA mandates that Defendant Trans Union conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

129.    The FCRA provides that if Defendant Trans Union conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

130.    Plaintiff initiated a dispute with Defendant Trans Union and disputed inaccurate information reporting in her credit file and requested that Defendant Trans Union correct and/or

21

delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

131.    Defendant Trans Union conducted virtually no investigation of Plaintiff's dispute, or such investigation was so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

132.    Plaintiff expended resources in the form of time, money, and effort to dispute the inaccurate information with Defendant Trans Union, to no avail.

133.    Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

134.    As a result of Defendant Trans Union's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of credit denials and having another consumer's credit information mixed into Plaintiff's credit file.

135.    Defendant Trans Union's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Trans Union was negligent,

entitling Plaintiff to recover under 15 U.S.C. § 1681o.

136.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(Defendant KDC)**

137.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

138.    Defendant KDC refused to remove information that belonged to another consumer – namely the Disputed KDC Collection Account.

139.    Defendant KDC violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Defendant Trans Union.

140.    As a result of Defendant KDC's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of

23

credit denials and having another consumer's credit information mixed into Plaintiff's credit file.

141.    Defendant KDC's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant KDC was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

142.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant KDC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. §§ 1692e(2), 1692e(8), and 1692e(10)**
**False Reporting to Trans Union**
**(Defendant KDC and Defendant Aldous)**

143.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

144.    The Debt Collector Defendants foregoing actions and omissions were in furtherance of the Debt Collector Defendants attempts to collect a debt falsely alleged to be owed by Plaintiff.

145.    The Debt Collector Defendants false reporting of the Mixed Accounts debts on Plaintiff's Trans Union consumer reports was in furtherance of the Debt Collector Defendants attempts to collect said debt.

146.    The Debt Collector Defendants reporting of the Mixed Accounts debts, falsely alleged to be owed by Plaintiff, to Trans Union as described herein, constituted "false, deceptive, or misleading representation or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e.

147.    Defendant KDC's actions and omissions regarding investigations of Plaintiff's disputes of the Mixed KDC Account information on Plaintiff's Trans Union consumer reports

24

were in furtherance of Defendant KDC's attempts to collect a debt.

148.    Defendant KDC's reiteration to Trans Union that the debt was valid and owed by Plaintiff, in response to Plaintiff's disputes, as described herein, constituted "false, deceptive, or misleading representation or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e.

149.    The Debt Collector Defendants foregoing actions and omissions in connection with the Debt Collector Defendants efforts to collect the Mixed Accounts debts violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

150.    As a result of the Debt Collector Defendants violations of the FDCPA, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of credit denials and having another consumer's credit information mixed into Plaintiff's credit file. Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

151.    Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover $1,000 in statutory damages, reasonable attorney's fees, and costs from the Debt Collector Defendants.

**COUNT V**
**15 U.S.C. §§ 1692f(1)**
**Collection of Any Debt Unauthorized by Explicit Law or Agreement**
**(Defendant KDC and Defendant Aldous)**

152.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

25

153. The Debt Collector Defendants further violated the FDCPA by using unfair or unconscionable means to collect a debt.

154. The Debt Collector Defendants' unfair and unconscionable means include, without limitation:

155. Attempting to collect an alleged debt from Plaintiff, which belonged to an entirely different consumer.

156. Attempting to coerce, pressure, and/or deceive Plaintiff into paying money that she did not in fact owe.

157. The Debt Collector Defendants' debt collection actions and/or inactions were false, deceptive, or misleading representations or means used in connection with the collection of an alleged debt.

158. As a result of The Debt Collector Defendants' actions and/or inactions, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, loss of sleep humiliation, and embarrassment of credit denials and having another consumer's credit information mixed into Plaintiff's credit file.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court enters a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this July 8, 2026.

> */s/ Robert M. Tobia*
> Robert M. Tobia, Sr., Esquire, PA Bar#54513
> GLANZBERG TOBIA LAW, P.C.
> 123 South Broad Street, Suite 1640
> Philadelphia, PA 19109
> Tel: (215) 981-5400
> Email: robert.tobia@gtlawpc.com
>
> *Attorneys for Plaintiff,*
> *Michelle Angelina Faulk*

27